FROHNER, appellant, *v.* RODGERS, respondent.

ASSIGNMENT OF ERRORS — *statement.*   A statement on appeal that does not contain an assignment of errors must be disregarded.

MOTION FOR JUDGMENT.   The practice of filing a motion for judgment, after a verdict has been recorded by the clerk, is not required by the Civil Practice Act, and therefore unauthorized.

INFORMAL VERDICT.   Courts can correct informalities in a verdict which do not affect the substance.

VERDICT CURES DEFECTIVE COMPLAINT — *description of lode claim.*   In this action in the nature of ejectment, the plaintiffs claimed two quartz lodes, alleged to be fifteen hundred feet in length and six hundred feet in width. The jury returned this verdict: " We, the jury, find for the plaintiffs, and allow and find for them only fifty feet on each side of said lodes.   No damages allowed."   *Held*, that the defective description of the premises specified in the complaint was cured by the verdict.   *Held*, also, that the judgment must follow this general verdict.

VARIANCE BETWEEN PLEADINGS AND PROOF.   A variance between the pleadings and proof must be taken advantage of at the trial, and cannot be considered by this court upon an appeal to conform the judgment to the verdict.

*Appeal from Third District, Lewis and Clarke County.*

THE judgment was rendered by WADE, J.

JOHNSTON & TOOLE, for appellants.

What judgment should be entered on the verdict ?   This is the only question before the court.   There is no exception to the verdict.   The evidence cannot be examined.

Questions of boundaries, identity of monuments, etc., are subjects of parol proof and are always left to the jury.   Tyler on Ejectment, 820 ;   Curtis on Patents, 253 ;   *Davis* v. *Rainsford*, 17 Mass. 207 ;   *Ferris* v. *Coover*, 10 Cal. 625.

Where the jury finds for the plaintiff in ejectment, he is entitled to judgment for a less amount of land than he has claimed in the complaint.   *Inglis* v. *Trustees, etc.*, 3 Pet. 112 ;   *Barclay* v. *Howell*, 6 id. 500.   The answers do not deny that the veins claimed by appellant are located as set out in the complaint.

In ejectment, artificial objects control courses and distances, and natural objects control both.   *Wyckoff* v. *Stephenson*, 14 Ohio, 20.

Courts will give effect to verdicts when the intention of the

jury can be ascertained, and pronounce judgment accordingly. *Mendelsohn* v. *Anaheim L. Co.*, 40 Cal. 660.

The pleadings, instructions and verdict show that the jury found 1,500 by 100 feet of the mine described in the complaint, for the appellants, and that there is no difficulty in designating the lot found by the jury. The judgment should conform to the verdict. *Farrow* v. *Farrow*, 2 J. J. Marsh. 338; *Ball* v. *Lively*, 4 Dana, 372; *Eden* v. *Rathbone*, 3 Conn. 291.

Appellants may have judgment for a less amount of land than they sued for in their complaint. Act of Congress, May 10, 1872, for development of mineral resources, § 7.

A defective complaint, which is too general, but states facts to constitute a cause of action, is cured by the verdict. Every fact necessary to support the verdict will be considered as proven at the trial. 1 Smith's L. C. 926; 3 Estee's Pl. 466; *Conley* v. *Chedic*, 7 Nev. 336.

CHUMASERO & CHADWICK and SHOBER & LOWRY, for respondents.

Appellants' statement does not point out the errors relied upon, and must be disregarded. Civ. Pr. Act, § 371; *King* v. *Sullivan*, 1 Mon. 282. This court can only consider the judgment roll and no error appears in it.

The issues raised by the replications were never and could not be tried. If they are considered by this court, there must be a new trial. Civ. Pr. Act, § 378.

Appellants claimed two parallelograms, each being 1,500 feet long and 600 feet wide. This location was made under the act of congress, approved May 10, 1872, and referred to by appellants. Under the laws of Montana, lode claims could only be 100 feet wide. Cod. Sts. 522, § 3; U. S. Mining Laws and Reg. Nov. 20, 1873. The locator of a lode claim cannot follow the same beyond the tract of mining land claimed. Act, May 10, 1872, §§ 3, 9.

Taking the description given in appellants' complaint, appellants have no right to any lode. There is nothing to support the verdict. Civ. Pr. Act, §§ 55, 66.

There is a fatal variance between the allegations of complaint

and verdict, which could have been cured only by an amendment of complaint. 1 Greenl. Ev., §§ 63, 73; *Lyon* v. *Blossom*, 4 Duer, 318; *Stout* v. *Coffin*, 28 Cal. 65.

The jury found for a limited portion of demanded premises, and the verdict was silent as to the remainder. Graham & W. New Trials, 153, 400–402; Coke Littleton, 227.

The judgment roll shows nothing about the boundaries, referred to by appellants, and shows that appellants are not entitled to any judgment.

SERVIS, J. The defendants file objections in this court to all that part of the transcript except the judgment-roll thereof, because the statement upon appeal does not contain an assignment of errors, as required by section 371 of the Practice Act, which objection, we think, well taken, and fully sustained by the authorities cited by defendants' counsel.

The action proper is one in the nature of ejectment, under our Code, and for the recovery of the possession of certain quartz leads or lodes.

Upon an examination of the judgment-roll proper, we find the complaint seeks to recover from the defendants the possession of two quartz lodes, each of 1,500 feet in length and 600 feet in width; that the same was tried to a jury upon issue duly joined, and the following verdict rendered:

"We, the jury, find for the plaintiffs, and allow and find for them only fifty feet on each side of said lodes. No damages allowed."

Upon this verdict the plaintiff *moved* for judgment, first, for *all* the property described in the complaint; second, for fifty feet on either side of said lodes; and the defendants also moved for judgment for them, notwithstanding the verdict — *Non obstante veredicto.*

Whereupon the court rendered the following judgment:

"Wherefore, by virtue of the law and by reason of the premises aforesaid, and upon said verdict and the pleadings in this action, it is adjudged that the plaintiff * * * recover of the defendants * * * the possession of all those portions of the property described in the plaintiffs' amended complaint, described

as follows, that is to say, that the said plaintiffs recover, as afore-said, so much of the Cannon lode claim mentioned in plaintiffs' amended complaint as is now developed and uncovered by the discovery shaft, or otherwise, on said lode claim, in length along said lode, together with fifty feet on each side of said portion of said lode, and no more. Also, so much of the Cannon Extension lode (east) claim mentioned in said complaint, as is now developed and uncovered by the discovery shaft, or otherwise, thereon, together with fifty feet on each side of said portion of said lode, and no more. And it is further adjudged that the plaintiffs have and recover of said defendants, except defendant Arnold, their costs," etc.

The only question necessary for us to consider is as to the authority for, and correctness of, this judgment.

The practice of *moving* for judgment after verdict seems to be without statutory authority or seeming necessity. If judgment be for the recovery of money only, the clerk shall render judgment within twenty-four hours after verdict, unless the same be stayed by order of the court. In other cases the court renders judgment as of course, unless a new trial be granted or other motion filed to intercept the judgment. But however necessary or useless may be this practice of obtaining judgment, it cannot affect the determination of the question under consideration.

The verdict rendered was but a general verdict, although they found the *width* of the property, and thereby less in amount than the plaintiffs claimed. This was but in accordance with the instructions of the court, and was good law.

If the verdict had been incorrect in form, the court could have corrected the informality, but not in substance.

It is true, under our Civil Practice Act, § 215, the jury might, at their discretion, have rendered a general or special verdict. A *special* verdict, by section 214 of our Practice Act, is such as shall present the conclusions of facts, which shall be so presented as that nothing shall remain but for the court to draw therefrom the conclusions of law. But no such verdict was ever rendered, but just such verdict as the court directed under the law, if the proof so justified, as we must presume it did. There was then nothing left for the court to do but either grant a new trial, if the

facts so warranted, or to render a general judgment upon this general verdict. Even if this could be construed into a general verdict, all the facts essential to the rights of the parties are not pretended to be presented, and it is not competent for the court, where such repugnancy exists, to supply the same, and, with this complex kind of verdict, partly rendered by the jury, and partly by the court, render judgment therein, it would be but to supplant the court for the jury, and thus deprive a party of his constitutional rights.

It is, however, said that the complaint in this action is too defective to support the verdict, and entitle the plaintiffs to the judgment they demanded. The complaint avers *title, possession,* and *ouster.* And the presumption of law is, that every fact necessary to justify the verdict was duly proven. And, although the complaint may have been defective by being too general, and the like, yet it seems counsel considered it sufficient to go to trial upon, the court deemed it sufficient to render a judgment upon, at least for such portion of the premises described therein as the court deemed the plaintiffs entitled to, and we deem all such defects cured by verdict.

Again, it is said that there is such a variance between the proofs and the pleadings, that no other judgment could be rendered than was rendered by the court below. We cannot examine these proofs, as they are excluded from our consideration by sustaining the objection taken by defendants' counsel; but, if we could, this was a matter to have taken advantage of upon trial, and cannot now be considered upon appeal to conform the judgment to the verdict, but judgment should follow the verdict until set aside by the *party opposing it.* And the authorities cited by plaintiffs in their original and reply brief fully sustain the view we have thus taken.

The judgment of the court below is therefore reversed, and the cause remanded.

*Judgment reversed.*

WADE, C. J., dissenting. Failing to agree with my brothers in this case, with much deference I submit the following dissenting opinion:

This was an action of ejectment brought by plaintiffs to recover

of defendants the possession of certain silver quartz leads. There was a trial, verdict for plaintiffs, and judgment on the verdict for the leads as now developed and defined. The plaintiffs, conceiving that the judgment as rendered is not as broad as the verdict, and that their rights are thereby sacrificed, appeal to this court for a modification of the judgment. The verdict is in effect as follows:

We find for the plaintiffs, and allow and find for them only 50 feet on either side of said lodes. No damages.

The verdict giving no description of the property, and only referring to it as "said lodes," we must necessarily go to the complaint for a description of the demanded premises, and to ascertain for what the verdict was rendered, and to what the judgment thereon will attach. The description of the premises in the complaint thus becomes a part of the verdict, and forms the basis upon which the judgment must either stand or fall.

The description in the complaint of the demanded premises is as follows: "Fifteen hundred feet on the Cannon lode or lead, and commencing at a monument and stake 300 feet south-easterly from Discovery shaft on said lode; thence running westerly, and 300 feet distant from the middle of the vein of said lode, and along said lode 1,500 feet; thence northerly to the middle of the vein of said lode 300 feet, and northerly 600 feet to a stake, being the north-westerly corner of said claim and lode; thence easterly 1,500 feet to a stake, being the north-easterly corner of said claim; thence southerly 600 feet to a stake, being at the south-easterly corner of said claim and lode, and the place of beginning, the said claim being 1,500 feet along the vein of said lode, and extending 300 feet each side from and along the middle of the vein of said lode." The Cannon extension has a similar description as to length and breadth of claim and boundaries.

Is this description of the property whose recovery is sought so definite and certain as that, being incorporated into the verdict, it will support and sustain a judgment for the plaintiffs for such possession? This is the great question in the case, and the answer to be given must conclusively determine it.

It is claimed, first, that the location of these leads, not having been made in pursuance of the act of congress of May 10, 1872, is void, and therefore that the complaint does not state a cause of

action; and second, that if the act had been complied with in other respects, the description of the property is so vague and uncertain as to amount to no description whatever, and hence that there is no foundation upon which to rest a judgment.

1. These lodes were discovered and located subsequent to the act of congress of May 10, 1872, and the rights of the parties herein must be determined by an interpretation of that act. The second section thereof provides: " A mining claim, located after the passage of this act, whether located by one or more persons, may equal but shall not exceed 1,500 feet in length along the vein or lode; but no location of a mining claim shall be made until the discovery of the vein or lode within the· limits of the ·claim located. No claim shall extend more than 300 feet on each side of the middle of the vein at the surface, nor shall any claim be limited by any mining regulation to less than 25 feet on each side of the middle of the vein at the surface, except where adverse rights existing at the passage of this act shall render such limitation necessary. The end lines of each claim shall be parallel to each other."

The first requisite under this act is to discover a vein or lode. This being done, the law defines the extent of surface-ground which may attach thereto and form a mining claim under this statute. This statute repeals the act of July 26, 1866, and makes an entire revolution as to the mode and manner of locating quartz claims. Prior to its passage, parties making a discovery of a vein or lode could follow it, in any direction it might take, for 2,200 feet, with all its dips, variations and angles, and surface-ground in width, as limited by the laws of the Territory, or the rules and regulations of the mining district, but by this statute the person discovering a vein or lode may claim a parallelogram of land 1,500 feet in length by 600 feet in width, but the width is controlled by the laws of the State or Territory, or the rules and regulations of the mining district, but shall not be less than 25 feet on each side of the vein or ledge. Instead of becoming possessed of a vein or lode that he may follow in any direction 2,200 feet, he is, by virtue of this act, entitled to the possession of a piece or tract of ground, after discovery of a vein or lode thereon 1,500 feet in length, and varying from 50 feet to 600 feet

in width, as the local laws, rules and regulations may determine; and he is also entitled to all the veins, lodes and ledges that may be found within these boundaries, as is provided in the third section of the act, thus demonstrating that it was the intention of congress to give to the discoverer of a vein or lode, not simply the possession of this lode and the tract of. ground, and of all the lands it might contain, and hence the necessity of absolute certainty as to the boundaries, as will hereafter more fully appear.

The act of congress fixes the length of the mining claim, and defines the maximum and minimum width thereof, and within these limits as to width, gives authority to the local legislatures, or to the rules and regulations of the mining district to declare the lateral extent of the claim. That this is the meaning of the act does not seem to admit of much doubt. The second section provides that, " No claim shall extend more than 300 feet on each side of the middle of the vein at the surface, nor shall any claim be limited, *by any mining regulation,* to less than 25 feet on each side of the middle of the vein at the surface; " thus virtually declaring that within these limits the mining regulations might fix the width of the claim.

The commissioner of the general land office, at Washington, in referring to section 2, already quoted herein, says, in his instructions to surveyors, etc. : " By the foregoing, it will be perceived that no lode claim, located after the date of said act, can exceed a parallelogram 1,500 feet in length by 600 feet in width, but whether surface ground of that width can be taken depends upon the local regulations, or State or Territorial laws in force in the several mining districts; and that no such local regulations or State or Territorial laws shall limit a vein or lode claim to less than 1,500 feet along the course thereof, whether the location is made by one or more persons, nor can surface rights be limited to less than 50 feet in width, unless adverse claims, existing on the 10th day of May, 1872, render such lateral limitation necessary."

This is not a judicial determination of the question, but the opinion is from such a source as entitles it to weight, and is so clearly within the meaning of the section referred to, that we indorse it, and say that the width of the surface ground or mining claim must depend upon our Territorial statute, or the mining

regulations of the district, where the same is located, subject only to the limits as prescribed by the act of congress.

Recurring now to the Territorial statute, defining the width of every lead or lode claim, which statute was in force at the date of the location of the claims in question, and we find the following (Cod. Sts., p. 522, § 3): "Claims on any lead, lode or ledge, either of gold or silver, hereafter discovered, shall consist of not more than    *    *    *    50 feet on each side of said lead, lode, or ledge for working purposes."

This is a general statute, and in force in every mining district in the Territory, and limits the width of claims upon any vein, lode or ledge to 100 feet, and it thus limited the claims of the plaintiffs herein, and, in failing to comply with this statute, they failed to locate their claims as required by the act of congress, and having neglected to comply with the only law that gives them any rights in the premises, it would seem that their acts are void. They enter upon the public lands, and take possession of just six times as much thereof as the law authorizes them to hold, by locating a claim for 600 feet instead of 100 feet in width, and thereby prevent five others, who are equally entitled with themselves, to enter upon the mineral lands, and to possess what the law gives them there, from entering thereon, and instead of possessing one claim, as the law entitles them to do, they take six claims, and attempt to hold them in violation of all law, and without any authority whatever, and they describe their six claims thus unlawfully taken, held and possessed by so convenient a boundary, that they may be expanded to an unlimited extent, and in any conceivable direction.

It is said, and truly, that, in an action of ejectment, if a party claims more lands than he is entitled to, he may yet hold that to which he has a legal right. This applies to cases where the title to a portion of the premises is undisputed, or where it is established by the proof, but in cases like the one under consideration, where the possessory title can only be acquired by the performance of certain defined acts, and where a failure to perform defeats all title and all right to possession, the doctrine as to a recovery of a portion of the premises has no application whatever. A failure to comply with the statute in entering upon

and locating a mineral claim, vitiates the location, because there is no right, except as given by the statute, and this right depends upon the performance of certain precedent conditions. Otherwise the entry and location is a trespass.

The right to enter and locate claims upon the mineral lands is but a license granted by the government, who is the owner of the soil, which license has attached to it certain conditions precedent, the performance of which, by the person making the entry, creates in him a possessory easement in the lands thus entered, which easement may ripen into a perfect title, where the requirements of the law granting the right of entry have been fully complied with. But an entry and location made in defiance of the law, and with no pretended compliance therewith, is a trespass from the beginning. The act itself provides (§ 5) that a failure to comply with any of these conditions pertaining to the location of the claims, shall vitiate the location and subject the same to relocation, and among these conditions is the extent and boundary of the claim.

In this case the plaintiffs, by virtue of the act of congress of May 10, were granted a license, upon certain conditions, to enter upon and locate one mining claim upon the public mineral lands, which claim might be 1,500 feet long by 100 feet wide, the boundaries of which to be marked and designated with distinctness and certainty. But instead of following the law in the premises, they take possession of six claims, or six times the amount of ground they are entitled to, and bound and describe it so indefinitely that the description thereof would apply equally well to any ground they might see fit to claim; so that, whatever the plaintiffs' rights are in the premises, they are rights acquired by a direct violation of the act of congress, and by a total disregard of the law that ought to have directed and controlled their actions in making their location, and we, therefore, fail to discover by what rule they can now claim any right to the ground thus located, even though the description and boundary thereof had been such as the law requires.

2. The second inquiry to which we direct attention is this: Is the description of the property in the complaint such as the act requires, or is it so vague and uncertain as that no property is

described, and thereby a failure to state a cause of action? And the cause of action failing, upon what can the plaintiff rest his judgment?

It is a familiar principle that the complaint must support the judgment, and if it fails, the judgment must also fail. The judgment can be no broader than the complaint, and any infirmity in the cause of action creates a like defect in the judgment.

Does the complaint conform to the requirements of the act of May 10 as to the boundaries of the location or claim? That act provides (§ 5): "The location must be distinctly marked on the ground, so that its boundaries can be readily traced. All records of mining claims hereafter made shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim."

The description therefore must be certain, and made so by reference to some permanent natural object, so as to identify the claim, and this evidently for the reason that the boundary thus made must form the basis upon which the patent is to issue. A re-survey is required before the patent is granted, but certainly the re-survey could not change the boundaries of the original location, and especially not where adverse claims had intervened. Temporary stakes and monuments will not answer the requirements of the law unless accompanied by courses and distances, or by a reference to some well-known points or objects, as the intersection of gulches, ravines or roads, or prominent buttes, hills, etc., in the immediate vicinity. Thus, a line starting at a given point and running in a *southerly* direction to a stake would be altogether too indefinite, for the line thus drawn might vary in its course nearly 180 degrees. A line running east, one minute south, or exactly south-east, or south, or south-west, or west, one minute south, would be described by a line running in a *southerly* direction. A reference to the description of the claims in the complaint will show them of this character. There are no natural objects, no permanent monuments to identify the claims. The boundary commences as follows: "Fifteen hundred feet on the Cannon lode or lead, and commencing at a monument and stake 300 feet *south-easterly* from Discovery shaft on said lode."

To find a starting point on this line, we must first assume that there is such a thing as Discovery on the Cannon lode, properly marked as the law requires. There is nothing contained in the description to identify this Discovery shaft, and how it is to be distinguished from any other prospect hole within the ten-mile mining district it is not easy to see. The description is silent upon the subject. We must next assume that there is a Cannon lode and Discovery so marked and identified as to distinguish it from an hundred others which we may easily presume are within the same mining district. Perhaps this Discovery shaft is identified by a board driven into the ground, upon which is written in pencil its name and that of the discoverer, as was the common custom of the country; but if the winds or the frosts should happen to throw down the board, or the storms to deface the names in pencil, what would distinguish this Discovery shaft from any other prospect hole? Does the statute permit any vague uncertainty of this kind, and does it not rather require absolute certainty in a matter so easy to identify and describe beyond the possibility of mistake?

If so lucky as to find this board or hole among the countless others of a similar character, which we have a right to presume may be found within the ten-mile mining district, and we are only referred generally to this district for this Discovery shaft, without any hint or direction as to what part of the district the hole will likely be found, which is no more definite than to refer to it by giving the name of the county in which it may be located, then proceed from this shaft, if perchance we have found the right one, 300 feet in a *south-easterly* direction to a stake. But where is this stake likely to be found? No course is given, and we may search for it over an area of almost 90 degrees, for a stake at a point east, one minute south, or south, one minute east, or at any intermediate point between these two, would answer the description *south-easterly*, and a line drawn by this description might vary in its direction more than 89 degrees. After reaching this indefinite, uncertain point, not identified by a reference to any natural object, thence proceed *westerly* 1,500 feet and 300 feet from the middle of the vein of said lode to a stake. Here we have a larger liberty. The area where the stake may be found is

more extended. Instead of a quarter, we have half a circle in which to draw the *westward* line. Instead of about 90 degrees we have nearly 180 degrees in which to vary the westerly line, to suit our convenience. That is to say, a line drawn south one degree west, or north one degree west, or in any other direction between these points, would exactly suit the description *westerly*. Indeed, this is an accommodating description. It is so elastic and easily conforms itself to the circumstances surrounding it, that the plaintiff, armed with such a weapon as this, could claim any good lead that might be discovered anywhere in the vicinity of his prospect hole.

But it is said that this westerly line must run 300 feet from the center of the vein or lode. This would make the line definite and certain, providing the whereabouts of the vein were known. But the vein itself exists only in the imagination. It is mere matter of conjecture whether there is a vein or not, and the only means by which we can even guess that there is a vein or lode is the fact of a discovery shaft more than 1,500 feet distant. And if there is a lode, the direction it takes and the course it runs is as uncertain as the westerly line we have described; so if the westerly line may vary in its direction 180 degrees, the line of the middle of the vein may likewise vary to the same extent, for no monument of any kind, not even a board or stake, attempts to mark or designate the middle of the vein or its direction. This ignorance of the vein, if there should happen to be one, accounts probably for this elastic boundary, so that, when a lead should be located as the law requires, this boundary might apply to and hold it.

Having reached the undefined end of this westerly line, thence proceed *northerly*, passing by the middle of the vein, which point is a myth, 600 feet to a stake which is the north-westerly corner of said lode or claim. Here again we have the liberty of nearly 180 degrees in which to establish this corner, and whether this *north-west* corner is south-east, north-east, south-west, east, west, north or south from Discovery shaft, it is utterly impossible, from this description, to determine.

Starting out from the north-west corner, which may be found at any convenient point required, thence *easterly* 1,500 feet to a stake, being the *north*-easterly corner of said claim. Here, also,

we can vary our course 180 degrees, or thereabouts, and the corner we establish may be in any other direction but north-east.

Having traveled around a half circle, whose diameter is 1,500 feet, and found what is called the north-east corner, thence *southerly* 600 feet, to the place of beginning, which is said to be the south-easterly corner of the claim, but in what direction this point is from discovery shaft, we cannot ascertain, from this description, within 90 degrees, and whether the tract of land described by this boundary would make a claim running north and south, east and west, north-east and south-west, or south-east and north-west, it is utterly impossible to determine from this boundary. And this description would apply to any other lode within the ten-mile district, as well as to the Cannon lode. It may be made applicable to any lead, represented by simply a prospect shaft, within all the district, for the reason that nothing in the description defines the locality of the Cannon lode, or so marks it as to distinguish it from any other lead. No hill, mountain, stream, house or tree directs where the lead may be found, or indicates its locality, and for all there is in this boundary it will apply precisely as well to one lead as another anywhere within the ten-mile mining district.

We, therefore, say that the description and boundary of this claim fails to comply with the act of congress, wherein it is required that the claim shall be located by reference to some natural object, or permanent monument, as will identify the claim, and that the location must be so distinctly marked on the ground that its boundaries can be readily traced.

The Cannon extension lode has a boundary precisely similar to that of the Cannon lode, and by virtue of these two descriptions, the plaintiffs claim a tract of land 3,000 feet long by 600 feet wide, and by virtue of the description and boundary of these claims, they become so extended that they can claim all the leads within a circle whose diameter is 3,000 feet. And if any other parties should come within this charmed circle, and make discovery of a lead, and develop the same by the expenditure of large amounts of money, whereby the same become valuable, these plaintiffs, by virtue of their plastic description and boundary, could apply the same to any new and valuable discovery that

might be made within the circle, for where no course is given to the line of boundaries, and no natural, immovable object referred to for the purposes of identification, even if the ends of the *westerly, northerly, easterly* or *southerly* lines were designated by temporary boards or stakes, it cannot be supposed that they would endure but for a short time, and are liable to be moved at pleasure and with perfect safety, where no course is given; so that the boundary given is a license to run the lines of the claim absolutely to suit the convenience of claimants. And that is this case, and it seems to me it illustrates the folly and injustice of maintaining a boundary and description of this character, especially so when the same violates an express act of congress.

It is claimed upon the part of appellants, that the verdict cures all the uncertainties of the complaint, and that we must presume, by reason of the verdict, that the jury had sufficient proof before them to reduce the boundaries of the location to absolute certainty. It is undoubtedly true that we must presume the verdict to be the result of proof, and, if this finding of the jury had been made certain, then a judgment rendered thereon would be of the same character. But a reference to the verdict as found will show that it partakes of the same uncertainty as the complaint. The verdict finds for the plaintiffs 50 feet on either side of "said leads." What leads? None other than those described in the complaint, and as therein described. The judgment on the verdict must attach to the leads mentioned in the complaint, and no others, and the proof cannot make the judgment certain, if the complaint is uncertain; neither can proof aid an uncertain verdict. The verdict is supposed to be the result of the proof. The property mentioned in the complaint, as therein described, becomes a part of the verdict, by virtue of the reference therein to "said leads," so the verdict, notwithstanding any proof before the jury, is just as uncertain as the complaint, and very likely for the reason that the proof did not aid the vague uncertainty of the boundaries in the complaint.

By virtue of this verdict, the plaintiffs now demand a judgment for the possession of "said leads;" in other words, for the possession of 50 feet on either side of an imaginary lode, and 1,500 feet along its length, in any direction it may happen to

take, and of this there is no guide except a prospect-hole somewhere within the wide limits of the ten-mile mining district, the particular locality of which is designated by no object by which it can be found, and this demand for judgment is based upon the proposition that we must presume that the jury had sufficient proof before them to identify the leads. This presumption is of little use to us when the jury deliberately attach to their verdict all the uncertainties of the complaint. If they had made their verdict certain, then we might presume the proof was of the same character, and so likewise the rendition of an indefinite, uncertain verdict, presumes only proof of the same kind.

The presumptions in favor of the verdict do not cure the defects in the boundaries, and yet we are called upon to give a judgment for the plaintiffs for the possession of a tract of land 100 feet wide by 1,500 feet long, which land must be equally divided in width by a vein or lode running through its exact center, which lode, as claimed, is yet undiscovered and unknown, and if it was known, its boundaries, in the complaint, would give no light as to the direction it ran, or the course it would take.

Suppose the plaintiffs had a judgment for 50 feet on either side, and for 1,500 feet along "said leads," how could they obtain possession, or how could a writ of possession be executed? In the first place a lead extending along the 1,500 feet must be discovered and located, and an officer having a writ to execute could, by virtue of the description in the complaint, search, in almost any conceivable direction, from Discovery shaft for "said leads." Such a judgment, and a writ requiring the officer to enter upon a prospecting expedition in search of an imaginary lode, would be void for uncertainty.

The plaintiffs say they will take the chances of finding the property if we give them the judgment they demand. But a judgment should be the final determination of the rights of the parties, and should not be simply the foundation upon which to plant another lawsuit to settle matters that should have been adjusted by the judgment.

Therefore we say there is no cause of action stated in the complaint; there is no property described therein, and hence there is nothing upon which to base a judgment. The verdict finds for

the plaintiffs for the property described in the complaint, but as there is no property therein described, the verdict is a nullity, and no judgment ought to be rendered thereon.

For these reasons we think there should be a judgment for the defendants.